**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN THE MATTER OF BARNETT | * | CIVIL ACTION |
| MARINE, IN C., AS OWNER OF | * | |
| BARGE OB 808, PETITIONING | * | NO. 12-948 |
| FOR EXONERATION FROM | * | |
| DAMAGES OR LIMITATION OF | * | SECTION "L" (1) |
| LIABILITY | * | |

<u>ORDER AND REASONS</u>

The Court has received Petitioner Barnett Marine, Inc.'s Motion to Dismiss the Claim of Vincent Grillo with Prejudice (Rec. Doc. 14), subsequently converted into a motion for summary judgment (Rec. Doc. 35), and Motion to Strike Exhibits (Rec. Doc. 39). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.      **BACKGROUND**

This limitation proceeding arises out of an alleged allision between two vessels. Claimant Vincent Grillo alleges that on March 9, 2005, his 17 foot aluminum recreational vessel allided with an unlit barge fleeted near Venice, Louisiana. Grillo claims to have sustained serious injuries and remained unconscious for several hours following this incident. Grillo alleges that two of his friends, Ned Malley and Sambo Moreau, came to help him, and that while he was in the hospital, either those two friends or Grillo's brother took photographs of the barge that his vessel had struck.

The identity of that barge remains an unresolved issue in this case, but Grillo alleges that it was Barge OB 808, which belonged to Petitioner Barnett Marine, Inc. ("Barnett Marine") at the time of the allision.

1

A.      **Factual Summary**

The parties submit a variety of letters and emails documenting their attempts to investigate this case. Grillo's former counsel, Gino Rendeiro, appears to have first contacted Barnett Marine in late January or early February 2006. Mr. Rendeiro wrote a letter to Mr. William Barnett stating that his client had been injured due to a collision "with a moored barge identified as OB 808." (UMS 156, Rec. Doc. 33-2 at 66). Mr. Rendeiro requested information about that barge and any others at the same location owned by Barnett Marine at the time of the collision. *Id.* According to Barnett Marine, it promptly notified its insurance agent, who notified the underwriters of the insurance policy, Underwriters Marine Services, Inc. (UMS 153-54, 152, Rec. Doc. 33-2 at 63-64, 62). Underwriters Marine then assigned the case to E. J. Halverson & Associates, Inc. for investigation and adjustment. (UMS 151, Rec. Doc. 33-2 at 61). When the case was assigned to E. J. Halverson, Taylor LaSalle of Underwriters Marine noted: "[T]he deck barge OB808 was deleted from coverage effective March 14, 2005. Therefore, if the accident date of March 9, 2005 is correct then this office does provide coverage." (UMS 152, Rec. Doc. 33-2 at 62).

Mac Lipscomb, a claims representative for E. J. Halverson, proceeded to investigate the case. As part of his investigation, Mr. Lipscomb interviewed both Vincent Grillo and Mr. Rendeiro. (UMS 149-150, 143-146, Rec. Doc. 33-2 at 59-60, 53-56). During these interviews, Mr. Lipscomb viewed the photographs taken by Grillo's friends following the accident. In a letter to Mr. LaSalle, Mr. Lipscomb noted: "Most interestingly, it appeared that the barge number was CB 808, not OB 808 as alleged." (UMS 145, Rec. Doc. 33-2 at 55). Furthermore, Mr. LaSalle noted in his own records that "[t]here is a definite issue on the ID of barge & the P.

2

attorney knows it. This could very well be a canal barge (CB 808)." (UMS 142, Rec. Doc. 33-2 at 52). Mr. LaSalle also noted in the same records that "barge OB 808 had been dropped off at fleet area days before when it was off charter," and that Underwriters Marine was "attempting to identify the fleeter as they have certain responsibility." *Id.*

Mr. Rendeiro then forwarded copies of the photographs to Mr. Lipscomb (UMS 131, Rec. Doc. 33-2 at 41), who forwarded them to Mr. LaSalle, noting that "the first two or three photographs . . . show the barge identification numbers as 'CB808', not 'OB808', which was our insured barge," and that efforts to identify the owner of that barge had not been successful (UMS 129, Rec. Doc. 33-2 at 39). A few days later, Mr. LaSalle sent Mr. Lipscomb an email stating:

> Mac, it is very close [*sic*] to underwriters that this is not an insured barge under our marine liability policy (ML 72). Did Mr. Grillo clearly state that this is the barge he hit or is there any wiggle room for him?
>
> Where was our barge at the time of the incident?

(UMS 128, Rec. Doc. 33-2 at 38).

In response to that email, Mr. Lipscomb sent Mr. LaSalle a letter. (UMS 126-27, Rec. Doc. 33-2 at 36-37). Mr. Lipscomb wrote: "[T]he allegation is that Vincent Grillo did indeed strike barge OB 808. Only until we viewed the photographs of which you have been provided copy [*sic*] did it appear that the barge was CB 808, not OB 808 as alleged." *Id.* at 36. With respect to the location of Barnett Marine's barge at the time of the incident, Mr. Lipscomb wrote: "OB 808 was . . . returned on February 23, 2005. . . . Barnett Marine generally used a fleeting area near one or two sunken barges, which, as evidenced by the photographs, seems consistent with the placement of these various barges and in particular, the one allegedly struck by the claimant." *Id.* Additionally, Mr. Lipscomb wrote:

3

> Denet Towing Service . . . may have moved barge OB 808 when it was returned . . . . There is no paper trail, at least on the part of the insured, which would document the exact location of OB 808 on the date of the alleged loss. We further note that . . . we suspect [Denet's] facilities sustained heavy and substantial damage during the hurricane and no records would be available from them.

*Id.* at 37. Finally, Mr. Lipscomb stated: "We assume there is always room for plaintiff-oriented attorneys to change his [*sic*] allegation but would feel comfortable, at least without overwhelming further evidence that this claim could be denied." *Id.*

Mr. Lipscomb then wrote a letter to Mr. Rendeiro stating that his investigation had determined that Barnett Marine did not own barge CB 808, the barge allegedly struck by Vincent Grillo, and would not further consider Mr. Rendeiro's claim. (UMS 125, Rec. Doc. 33-2 at 35). In response, Mr. Rendeiro reiterated his request that Mr. Lipscomb provide information that would help him to locate the owner of that barge, and added: "Should I not receive any response to this letter, please be advised I will have no choice but to initiate litigation which Bennett [*sic*] Marine will undoubtedly be made a party to." (UMS 122, Rec. Doc. 33-2 at 32). That letter was dated June 30, 2006. Mr. Lipscomb replied noting his "suspicion" that Canal Barge Lines owned CB 808. (UMS 118, Rec. Doc. 33-2 at 28).

In a letter dated August 18, 2010, Wayne W. Yuspeh, Grillo's current counsel, sent a letter to E. J. Halverson noting that he had recently been retained to represent Vincent Grillo and noting that "[i]nformation we presently have indicates that barge OB 808, involved in the allision, was owned by Barnett Marine." (UMS 095, Rec. Doc. 33-2 at 6). Shortly thereafter, Mr. Yuspeh also subpoenaed Underwriters Marine's records.

Additionally, the parties submit affidavits and deposition testimony. Grillo submits the affidavit of Mr. Rendeiro. (Rec. Doc. 29-1). Mr. Rendeiro's affidavit states that Mr. Lipscomb

represented to Mr. Rendeiro "that neither [Mr. Lipscomb], nor Halverson and Associates had any knowledge of the barge fleeting operator of either Barge OB 808 or of Barge CB 808," and that Mr. Rendeiro relied on those representations. (*Id.* at ¶¶ 7-9). Furthermore, Mr. Rendeiro states that he "subsequently learned that the photo used by Mr. Lipscomb . . . is in reality a photo of Barge OB 808," which Barnett Marine owned, *id.* at ¶ 10, and that "Mr. Lipscomb intentionally misled him" when he represented the lack of a connection between Barge OB 808 and Barnett Marine, *id.* at ¶ 11-14.

Grillo also submits the affidavit of his brother, Angel S. Grillo. (Rec. Doc. 38-1).[1] Angel Grillo states that on March 11, 2005, he "went out in a boat with Sambo Moreau who brought [him] to the spot of [Vincent Grillo's] accident," where "Sambo pointed out a barge that he identified as the one that was in the navigation channel when he found [Vincent Grillo]." *Id.* at 1. Angel Grillo states that he took photographs of the barge, *id.*, which are attached to the affidavit (Rec. Docs. 33-2 to 33-6).

Barnett Marine submits the affidavit of Ecton T. Terrebonne, a former employee of Barnett Marine. (Rec. Doc. 33-3). Mr. Terrebonne's affidavit describes his background with Barnett Marine and recalls his assistance in Underwriters Marine's investigation of the incident involving Grillo. *Id.* at ¶¶ 1-5. Mr. Terrebonne describes having examined the photos and lists multiple reasons why he believes that the photos do not depict OB 808, including the lack of a pollution rail, the dimensions of the barge in the photograph, and the age of the barge in the photograph. *Id.* at ¶¶ 9-10.

---

[1]As explained below, Angel S. Grillo's affidavit and accompanying photographs are the subject of a motion to strike. (Rec. Doc. 39).

Finally, Barnett Marine submits excerpts from the deposition of Vincent Grillo. (Rec. Doc. 37-1). In his deposition, Grillo testifies that his brother, Angel Grillo, took pictures of the alleged accident site shortly after the accident. *Id.* at 3-4. Vincent Grillo also states that the numbers on the side of the barge are "CB 808," *id.* at 12, 13, and that he does not know whether he hit "CB or OB or 8," *id.* at 13. Furthermore, Grillo testifies that he believes the barge in the picture is the barge he hit based on what Angel Grillo, Ned Malley, and Sambo Moreau told him, rather than any specific recollection from the accident itself. *Id.* at 14-15.

**B.    Procedural History**

On January 8, 2007, Grillo filed suit in the 25th Judicial District Court for the Parish of Plaquemines against Central Boat Rentals, Inc.; Bud's Boat Rental, LLC; and Callais Marine Service of Venice, Inc. (Rec. Doc. 14-4 at 1). Grillo's original Petition for Damages claimed that Grillo struck a barge "later identified as CB 808," *id.* at ¶ XI, and pled, on information and belief, that each of the three defendants "was and or is the owner and operator" of that barge, *id.* at ¶¶ IV-VI. On February 17, 2012, Grillo filed the First Amending and Supplementing Petition in that case. (Rec. Doc. 14-5). Among other changes, that document changed "CB 808" to "OB 808," *id.* at ¶ 2, and added as defendants Barnett Marine, Denet Towing, and Westport Insurance Corporation, *id.* at ¶¶ 3-5.

On April 13, 2012, Barnett Marine filed a Complaint for Exoneration From and Limitation of Liability in this Court as the former owner of Barge 808. (Rec. Doc. 1). Four parties subsequently filed claims and answers: Grillo, Denet Towing, Callais Marine, and Bud's Boat Rental. State court defendants Westport Insurance and Central Boat Rentals are not parties to this action.

6

**II.      PRESENT MOTIONS**

Barnett Marine's motion to dismiss Mr. Grillo's claims (Rec. Doc. 14) was originally submitted to this Court on October 31, 2012. Barnett Marine argues that Grillo's claims are barred by the three-year statute of limitations for maritime torts. In opposition, Grillo argues that Barnett Marine fraudulently concealed the identity of its vessel such that the statute of limitations must be equitably tolled, a position that Barnett Marine disputes. Because both parties submitted a large amount of evidence outside the pleadings, the Court subsequently issued an Order converting Barnett Marine's motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). (Rec. Doc. 35). The Court also allowed both parties an opportunity to submit any additional pertinent material.

On December 20, 2012, both Barnett Marine and Grillo submitted supplemental memoranda and accompanying evidence. (Rec. Docs. 37, 38). Grillo's supplemental memorandum includes the affidavit of Angel Grillo (Rec. Doc. 38-1) and five photographs (Rec. Docs. 38-2 to 38-6) allegedly taken by Angel Grillo. Barnett Marine then filed a motion to strike these materials (Rec. Doc. 39) on the grounds that Vincent Grillo has previously failed to identify Angel Grillo as a witness. Vincent Grillo opposes the motion, arguing primarily that he had anticipated using the photographs for impeachment purposes only, thus exempting them from Rule 26 disclosures. Both the motion for summary judgment and the motion to dismiss are now before the Court.

**III.     LAW AND ANALYSIS**

**A.       Standard on Motions for Summary Judgment**

Summary judgment is appropriate if the moving party can show "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial

burden of "informing the district court of the basis for its motion, and identifying those portions

of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its Rule

56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the

mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). "The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid

summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated

assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment

motion, the court reviews the facts drawing all reasonable inferences in the light most favorable

to the nonmovant. *Id.* at 255.

**B.      Equitable Estoppel and Fraudulent Concealment**

Rooted in "the maxim that no man may profit from his own wrong," the doctrine of

equitable estoppel prevents a defendant from relying on the statute of limitations in certain

circumstances. *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959). "The equitable

principle of estoppel prevents a defendant whose representations or other conduct have caused a

plaintiff to delay filing suit until after the running of the statutory period from asserting that bar

to the action." *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231 (5th Cir. 1980) (citing *Glus*,

359 U.S. 231). Under Fifth Circuit case law, equitable estoppel can bar defendants from asserting the statute of limitations on Jones Act claims, *id.,* which are governed by the same statute of limitations as torts brought under the general maritime law, 46 U.S.C. § 30106.

Equitable estoppel can apply under a variety of circumstances. For example, it can apply when the defendant has misled the plaintiff about how long she has to file suit, *Glus*, 359 U.S. at 235, or promised not to rely upon the statute of limitations as a defense, *id.* at 233 (citing *Schroeder v. Young*, 161 U.S. 334, 344 (1896)), or promised to pay or settle a claim, *Sanchez*, 626 F.2d at 1231 (footnote omitted). "However, in order to create an estoppel, the conduct of the defendant must be so misleading as to cause the plaintiff's failure to file suit." *Id.* (citing *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3d Cir. 1971)).

In some circumstances, fraud may toll the statute of limitations. *See, e.g.*, *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 412 (5th Cir. 1990) (footnote omitted). But "[a]llegations of fraudulent concealment do not free plaintiffs of their obligation to exercise reasonable diligence . . . ." *Id.* at 412-13. "A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988) (citations omitted). The main difference between equitable estoppel and equitable tolling is that while equitable estoppel focuses on the defendant's conduct, equitable tolling focuses on "the plaintiff's excusable ignorance" of the relevant facts. *Hebert v. General Truck Drivers & Helpers, Local 270*, No. 03-1744, 2004 WL 1597144, at *9 (E.D. La. July 16, 2004) (quoting *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 879 (5th Cir. 1991)).

9

**C.    Analysis**

Barnett Marine's principal argument in favor of dismissing Grillo's claims is straightforward: Grillo added Barnett Marine to the lawsuit after the expiration of the three-year statute of limitations for maritime claims. 46 U.S.C. § 30106. Because the alleged accident took place on March 9, 2005, the statute of limitations expired on March 9, 2008. Grillo added Barnett Marine to his state court Petition for Damages on February 17, 2012, approximately four years after the statute of limitations expired. Thus, Barnett Marine argues that his claims should be dismissed.

In opposition to Barnett Marine's motion, Grillo argues that Barnett Marine fraudulently concealed the identity and location of its barge, and as a result, the statute of limitations should be equitably tolled. Citing the correspondence described in detail above, Grillo explains that his former attorney, Mr. Rendeiro, requested information from Barnett Marine about Barge OB 808 and any other barges at the accident site owned by Barnett Marine. Grillo argues that upon receiving this request, Barnett Marine and its agents "discovered several important facts that allowed them to effectively conceal their barge's identity, presence and involvement at the accident site." (Rec. Doc. 25 at 4).

In support of this argument, Grillo relies heavily on Mr. Lipscomb's letter to Mr. LaSalle dated May 5, 2006. That letter contains an acknowledgment by Mr. Lipscomb that "Barnett Marine generally used a fleeting area near one or two sunken barges, which . . . seems consistent with . . . the one allegedly struck by the claimant." (UMS 126, Rec. Doc. 33-2 at 36). Yet in the next paragraph, Mr. Lipscomb states that "there is no paper trail" documenting the exact location of OB 808 at the time of the accident, and notes Mr. Lipscomb's suspicion that the offices of

Denet Towing "sustained heavy and substantial damage during [Hurricane Katrina] and no records would be available from them." *Id.* at 37. Grillo's interpretation of this letter is that "[k]nowing full well that their barge was at the accident site on the night of the accident, [Barnett Marine] concealed this pertinent and requested information from Mr. Rendeiro." (Rec. Doc. 25 at 5). Grillo notes that he discovered all this only due to "a recent fortunate stroke of luck," through a subpoena of the insurance company and adjusting company. (Rec. Doc. 25 at 4).

Grillo also argues that Barnett Marine fraudulently concealed the identity of its barge by altering the identifying numbers on the barge's hull from "OB 808" to "CB 808," and then representing to Mr. Rendeiro that the barge depicted in the photographs was CB 808, not OB 808.[2] In support of this contention, Grillo submits photographs showing the barge's lettering—including the photographs accompanying the affidavit of Angel S. Grillo, which are the subject of Barnett Marine's Motion to Strike Exhibits—and also cites Mr. Lipscomb's letters to Mr. Rendeiro stating that the photographs depict Barge CB 808, which Barnett Marine does not own. (UMS 125, 118, Rec. Doc. 33-2 at 35, 28).[3]

---

[2]Accordingly, Barnett Marine misses the mark somewhat when it emphasizes that "Grillo admits that the barge in the photograph, which he adamantly claims is the barge he hit, is identified as 'CB 808,'" and that "Barnett Marine did not own, nor had ever owned, a barge 'CB 808'" at the time of Grillo's accident. (Rec. Doc. 33 at 8). The crux of Grillo's argument is that Barge OB 808 was mislabeled as CB 808. Therefore, any "admission" by Grillo that the photographs depict a barge labeled "CB 808" does not necessarily constitute an admission that the photographs do not depict Barnett Marine's barge.

[3]Grillo also cites two more facts in support of his fraudulent concealment claim: (1) the lack of any government investigation of the accident, and (2) the fact that Barnett Marine sold OB 808 on March 14, 2005, five days after the alleged accident. But neither of these facts suggests fraudulent conduct by Barnett Marine. The lack of an official investigation, despite the fact that Mr. Rendeiro claims to have reported the incident to the U.S. Coast Guard, is not enough for this Court to conclude that Barnett Marine acted fraudulently. Similarly, the March 14, 2005 sale does not appear to be fraudulent because there is no evidence that Barnett Marine

In response to Grillo's arguments, Barnett Marine argues both that its conduct did not constitute fraudulent concealment and that Grillo did not meet the requirement of diligent inquiry that applies to a plaintiff asserting this doctrine. <u>First</u>, Barnett Marine argues that its conduct did not constitute fraudulent concealment. Essentially, Barnett Marine argues it "did nothing at any time to prevent Grillo from filing suit except to state that the barge in the photographs . . . was not a Barnett Marine barge." (Rec. Doc. 33 at 6). Barnett Marine emphasizes that the photographs depicting the barge were in Grillo's possession, and taken by friends of Grillo himself; Barnett Marine's representatives merely offered their own interpretation of these photographs. Furthermore, Barnett Marine argues that Grillo's claim that it altered the barge's identifying numbers is implausible, both because such alteration would be physically difficult to accomplish, and because Barnett Marine could not have anticipated *ex ante* that an accident like this one would take place. Barnett Marine also cites the physical dissimilarities between the barge depicted in the photographs and Barge OB 808, which are described in Mr. Terrebonne's affidavit. (Rec. Doc. 33-3 at ¶¶ 9-10).

<u>Second</u>, and more importantly for the purposes of this motion, Barnett Marine argues that Grillo did not exercise reasonable diligence as required by the doctrine of equitable tolling. Barnett Marine points to the completely unexplained delay between Mr. Rendeiro's last correspondence with Mr. Lipscomb in late June and early July 2006, and the resumption of the investigation by Grillo's new counsel in the fall of 2010. Barnett Marine argues that this unexplained delay constitutes a failure to conduct a reasonable and diligent investigation because Grillo had the crucial photographs in his possession, and furthermore, Grillo could have

represented to Grillo that it did not own OB 808 on the date of the alleged accident.

subpoenaed Underwriters Marine's records before the expiration of the statute of limitations in March 2008.

After reviewing the evidence submitted by both parties, including the affidavits, the deposition testimony, and all the material subpoenaed from Underwriters Marine, the Court holds that neither equitable estoppel nor equitable tolling applies to this case. Grillo's claim for equitable tolling fails because Grillo has failed to exercise reasonable diligence in this case. The relevant photographs were in Grillo's possession, and his attorney was fully capable of investigating them and drawing his own conclusions, rather than relying on those of Barnett Marine. Grillo's new counsel states that he ultimately subpoenaed the Underwriters Marine records "out of frustration" when he was unable to uncover any records relating to Barge CB 808. (Rec. Doc. 38 at 2). However, he offers no explanation as to why this took place in the fall of 2010, rather than sometime between July 2006 and March 2008.

The Court finds this lack of action particularly puzzling given Mr. Rendeiro's statement in his June 30, 2006 letter to Mr. Lipscomb that if he did not receive a response to his inquiries regarding Barge CB 808, he would be forced "to initiate litigation which [Barnett] Marine will undoubtedly be made a party to." (UMS 122, Rec. Doc. 33-2 at 32). In other words, even in June 2006, Mr. Rendeiro explicitly stated that suing Barnett Marine was not off the table. As a result, Mr. Rendeiro's failure to pursue the case further at that time—either by investigating Barge CB 808 and discovering the apparent lack of any records relating to that barge, or by attempting to subpoena Underwriters Marine's records, or by simply adding Barnett Marine to the lawsuit regardless of its representations and seeking further information through discovery—constituted a failure to exercise reasonable diligence.

13

Furthermore, Barnett Marine cannot be equitably estopped from asserting the statute of limitations in this case. Evidently, Barnett Marine and its representatives were not completely transparent with Mr. Rendeiro regarding the possible location of Barge OB 808 at the time of the accident. But the information that they failed to reveal was just that—a possibility. This possibility would not have been enough for Grillo to prove at trial, by a preponderance of the evidence, that the barge he struck belonged to Barnett Marine. Furthermore, at the time that this supposed act of fraud occurred, this matter was still being investigated; no case had been filed against any defendants, let alone against Barnett Marine. If, for example, Barnett Marine had refused to answer a court-sanctioned discovery request, Grillo's argument in favor of equitable estoppel might be stronger, but that is not the case here. The analysis might also be different if Barnett Marine failed to disclose evidence showing that Barge OB 808 was *actually* at the accident site at the time of the allision. But that is also not the case here. Barnett Marine failed to disclose a *mere possibility* that Barge OB 808 was at the accident site, and furthermore, it did so based on an eminently reasonable belief that the barge involved was CB 808, not OB 808.[4]

The Court cannot say that the failure of Barnett Marine's own insurer and claims adjuster to indicate that Barnett Marine's barge *could* have been at the site of the accident was "so misleading as to cause the plaintiff's failure to file suit." *Sanchez*, 626 F.2d at 1231 (citing *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3d Cir. 1971)). This case is not like other examples of equitable estoppel, where the defendant directly caused the plaintiff's failure to file suit by

---

[4]Although the color photographs submitted in connection with Angel Grillo's affidavit are more ambiguous than the previously submitted photographs with respect to whether the barge was labeled "OB" or "CB," they are still far from sufficient to prove the allegations of fraud that Grillo levels against Barnett Marine.

making misleading statements—for example, by promising to settle the case outside of court. At most, Barnett Marine's conduct caused a minor delay in the process of identifying the relevant barge. This is simply not sufficient to estop Barnett Marine from pleading the statute of limitations in a case filed four years after its expiration.

Accordingly, summary judgment must be granted to Barnett Marine on the grounds that the statute of limitations bars Grillo's claims. Because the Court is able to reach this conclusion without considering the affidavit of Angel S. Grillo and the accompanying photographs, Barnett Marine's motion to strike these materials is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that Barnett Marine's motion to dismiss (Rec. Doc. 14), subsequently converted to a motion for summary judgment (Rec. Doc. 35), is GRANTED. The claims of Vincent Grillo are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Barnett Marine's motion to strike (Rec. Doc. 39) is DENIED AS MOOT.

New Orleans, Louisiana, this 15th day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE